544 A.2d 59

**Stuart Menachem JOSELIT, Appellant,**

v.

**Susan Pearl JOSELIT, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 1988.

Filed June 21, 1988.

Mark A. Momjian, Philadelphia, for appellant.

Michael J. Barrett, Scranton, for appellee.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

The issue in this appeal is whether the trial court abused its discretion by refusing to exercise its jurisdiction to hear a custody dispute, notwithstanding the presence of the child in Pennsylvania, which is also the home state of the child, in deference to the courts of New York, where the child's mother now resides and where the child was temporarily hospitalized for sophisticated treatment.

Stuart Menachem Joselit and Susan Pearl Joselit were married on March 25, 1985 in Bronx County, New York. After their wedding, they moved to Scranton, Pennsylvania, where Stuart had made his home several years before his marriage. On May 21, 1986, Susan gave birth to a son, Ephraim, in Pennsylvania. The infant child developed various medical problems and received treatment at a Pennsylvania hospital. When the infant's condition worsened, the

treating physician in Pennsylvania advised the parents to seek more sophisticated treatment in New York City. On January 29, 1987, Ephraim, then eight months old, was admitted to Babies Hospital (Columbia Presbyterian Hospital) in Manhattan, New York, for evaluation and treatment. There, the child's treatment appeared to be impeded by interference not immediately identifiable. Complications developed. As a result of careful investigation by the hospital staff, it was ascertained that the incidents of interference occurred only when the mother was alone with the child. On March 16, 1987, the mother voluntarily committed herself to a New York hospital for psychiatric treatment. Thereafter, Ephraim's condition improved, and, on March 27, 1987, he was discharged from the hospital. He remained temporarily in New York, however, staying at the home of his paternal grandparents so that he could be near the hospital in the event of additional complications. When his condition had improved sufficiently, he returned with his father to Scranton, Pennsylvania, on July 15, 1987.

Meanwhile, Stuart and Susan Joselit had separated. On May 21, 1987, Stuart commenced the instant action in divorce in Lackawanna County. In the same action, he sought a decree confirming custody of his son.[1] On June 17, 1987, Susan Joselit also commenced an action for divorce, but her action was brought in the Supreme Court of Kings County, New York. She, too, requested custody of the parties' child.

On July 21, 1987, Susan filed a motion in the Court of Common Pleas of Lackawanna County requesting dismissal of Stuart's custody action on grounds that the New York Supreme Court was a more appropriate forum. On August 25, 1987, the trial court granted this motion. The court "determined that Pennsylvania [was] the home state for deciding the issue of custody," but concluded nonetheless that "Kings County, New York [was] the more convenient

1. See: Act of April 2, 1980, P.L. 63, No. 26, §§ 301 and 401, as amended, 23 P.S. §§ 301 and 401.

forum for adjudicating the issue." Stuart Joselit appealed.[2]

■ Because Pennsylvania is the child's home state, it is clear that the courts of this Commonwealth have jurisdiction to hear and decide a dispute regarding his custody. The Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), at 42 Pa.C.S. § 5343, defines the "home state" of the child as

[t]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned.

The U.C.C.J.A., at 42 Pa.C.S. § 5344(a), provides:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

From his birth on May 21, 1986 until January 29, 1987, Ephraim lived with his parents in Scranton. Thereafter, he was admitted to Babies Hospital in New York City, where he remained for approximately two months. Upon discharge from the hospital, Ephraim remained in the New York home of his paternal grandparents until he had recuperated sufficiently to return to Scranton. On July 15, 1987, the child returned to his father's home in Scranton, Pennsylvania, where he continues to reside. It is clear, therefore, that Pennsylvania is the child's home state and

---

**2.** Although interlocutory in nature, the trial court's order is appealable as of right by virtue of Pa.R.A.P. 311(c).

that the court in Lackawanna County has jurisdiction to hear the dispute regarding the child's custody.

The Uniform Act, at 42 Pa.C.S. § 5348(a), however, contains the following pertinent provision:

**(a) General rule.**—A court which has jurisdiction under this subchapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an *inconvenient forum* to make a custody determination under the circumstances of the case and that a court of another state is a *more appropriate* forum. (Emphasis added.)

In determining whether it is an "inconvenient" forum, a court is directed to "consider if it is in the interest of the child that another state assume jurisdiction." 42 Pa.C.S. § 5348(c). See also: *Commonwealth ex rel. Octaviano v. Dombrowski*, 290 Pa.Super. 322, 326, 434 A.2d 774, 776 (1981). In making such a determination, the court should consider the following factors:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of subchapter).

42 Pa.C.S. § 5348(c).

■ It was in reliance upon these provisions that the trial court declined to exercise its jurisdiction, even though Pennsylvania was the home state of the child. In reviewing the decision of a trial court declining to exercise its jurisdiction

under the U.C.C.J.A., we must apply an abuse of discretion standard. The decision of the trial court will not be reversed absent an abuse of discretion. See: *Brown v. Brown*, 195 Conn. 98, 486 A.2d 1116 (1985); *Lustig v. Lustig*, 99 Mich.App. 716, 299 N.W.2d 375 (1980); *Dennis v. Dennis*, 387 N.W.2d 234 (N.D.1980). In defining this standard, the Pennsylvania Supreme Court has said:

> When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Mielcuszny et ux. v. Rosol*, 317 Pa. 91, 93, 94, 176 A. 236.

*Garrett's Estate*, 335 Pa. 287, 292–293, 6 A.2d 858, 860 (1939). See also: *Commonwealth v. Wade*, 485 Pa. 453, 467, 402 A.2d 1360, 1367 (1979).

■ As a general rule, the home state of the child is the preferred forum. This is particularly so where the child has only known one home state. Cf. *Warman v. Warman*, 294 Pa.Super. 285, 439 A.2d 1203 (1987). The burden, therefore, is on a petitioner who would have a court in the home state decline to exercise its jurisdiction to show that the home state is an inconvenient forum and that another state would be a more appropriate forum. *Id.*, 294 Pa.Superior Ct. at 302, 439 A.2d at 1211. Here, the only connection which the child had with New York was his temporary hospitalization and recuperation in that state. All other contact has been with Pennsylvania. The temporary hospitalization of the child in New York would appear to be an inadequate basis on which a Pennsylvania court should decline to exercise

jurisdiction. Therefore, we will examine carefully the reasons given by the trial court for its order.

Initially, the trial court concluded that the child *resided* in New York during hospitalization and recuperation and that New York, therefore, had become the home state of the child during that period. We are constrained to disagree. The hospitalization in New York was temporary and did not effect a change in the child's domicile or home state. During this entire period, the child was subject to the control of one or both parents who resided in Scranton, Pennsylvania. The child's home state did not change merely because of temporary hospitalization in another state.

The trial court also considered it significant that the New York Department of Social Services had ostensibly awarded custody of the child to the father. If this is so, it is a fact which does not appear of record. Appellant's custody of his son, insofar as can be determined from the record, is because he is the father of the boy and not because custody was awarded by a social agency located in New York.

Moreover, contrary to the trial court's apparent belief, this case is not controlled by the provisions of 42 Pa.C.S. § 5344(a)(5). This subsection provides as follows:

(a) **General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

This provision pertains to the courts of this Commonwealth. In the instant case, moreover, the agency in New York did not make an investigation of the child's home. This home has always been in Scranton, Pennsylvania, and it is in Scranton where the child continues to live with his father.

The trial court also observed that a substantial amount of medical evidence was located in New York and that it was in New York that the mother received psychiatric treatment. This is correct. However, standing alone it was an inadequate basis for the trial court's determination that New York would be a more appropriate forum. The child was born in Pennsylvania, lived his entire life in Pennsylvania, and was initially hospitalized in Pennsylvania. His parents also lived in Pennsylvania until their separation, and his father, with whom the child resides, continues to be domiciled in Pennsylvania. Under these circumstances, Pennsylvania is not rendered an inconvenient forum by virtue of either the child's temporary hospitalization in New York or his mother's receipt of psychiatric treatment in New York.

Finally, the trial court found New York a more appropriate forum because the child's grandparents resided in New York. However, the grandparents are not parties to this litigation, and it does not appear that they are responsible for the child's care. This Court has held that, under such circumstances, the out-of-state residence of the grandparents is not alone determinative of whether Pennsylvania is an inconvenient forum. See: *Commonwealth ex rel. Octaviano v. Dombrowski, supra* 290 Pa.Super. at 327, 434 A.2d at 777. The fact that the grandparents lived in New York was not an adequate reason for the trial court's declining to exercise its jurisdiction.

Similarly, New York was not rendered a more appropriate forum merely because the child's mother, after she had separated from the child's father, elected to return to New York. The child remained in Pennsylvania with his father. Pennsylvania, moreover, was the state of marital domicile; and, therefore, it was the state having the greater interest in the marital action of which the custody dispute was a part.

In short, the record in this case establishes unequivocally that Pennsylvania's contacts with the child and with the child's immediate family are more substantial than

those of New York. We are constrained to conclude, therefore, that the trial court abused its discretion when it determined that Pennsylvania was an inconvenient forum and that New York was a more appropriate forum to decide the custody of Ephraim. Pennsylvania, not New York, is the home state of the child. The child was born in Pennsylvania, lived his entire life in Pennsylvania, and continues to live in Pennsylvania with his father. New York is not a more appropriate forum. It did not become a more appropriate forum merely because the child was temporarily hospitalized in New York to obtain more sophisticated hospital services than were available in Scranton or because his mother, upon separation from her husband, the child's father, elected to return to New York where her parents, the child's maternal grandparents, resided. When the trial court declined to exercise its jurisdiction under these circumstances, it abused its discretion.[3]

Reversed and remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

**3.** Because it is clear that New York is not a more appropriate forum, we find it unnecessary to decide whether New York has jurisdiction to decide the custody of a child who is domiciled in Pennsylvania.